**Susan K. PRESTON, Plaintiff,**

v.

**BERENDSEN FLUID POWER, Defendant.**

No. 5:99CV138.

United States District Court, W.D. Michigan, Southern Division.

Dec. 22, 2000.

Frederick E. Mackraz, Rutgers & Mackraz, PLC, Grand Rapids, MI, for Susan K. Preston.

Ann L. Andrews, Honigman, Miller, Schwartz & Cohn, Lansing, MI, for Berendsen Fluid Power.

## *OPINION*

ROBERT HOLMES BELL, District Judge.

This is a civil action brought by Plaintiff Susan K. Preston against her employer, Berendsen Fluid Power, Inc., alleging gender based discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206 *et seq.* and Michigan's Elliott–Larsen Civil Rights Act, M.C.L. § 37.2202(1)(a). This matter is before the Court on Defendant's motion for summary judgment.

## I.

Plaintiff Susan K. Preston ("Preston") was hired by Defendant Berendsen Fluid Power, Inc. ("Berendsen") in April 1995 as an Inside Sales Representative ("ISR"). Berendsen is a distributor of fluid power products, with a primary emphasis on selling hydraulic components and products. In 1996 Preston applied for a position as a Field Sales Representative ("FSR"). Plaintiff has presented evidence that Fred Mendricks, the Field Sales Manager, told her she could not have the job because his customers would not accept a woman as a salesperson. He offered the job to a man. When the man did not accept the position, Mendricks offered the FSR position to Preston.

Before taking the FSR position at $34,000, Preston was an ISR earning $27,601. The other FSRs in the Grand Rapids office during the relevant time frame were all men. Their starting salaries were 26% to 53% higher than Plaintiff's starting salary: Harold Gillette started at $43,000; John McClure started at $52,000; Mike Brooks started at $45,000; and David Lovell started at $50,000.

Plaintiff alleges discrimination in pay in violation of the Equal Pay Act, 29 U.S.C. § 206(d), and gender discrimination in violation of the Elliott–Larsen Civil Rights Act, M.C.L. § 37.2202(1)(a). Defendant has filed a motion for summary judgment.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If Defendant carries its burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"On summary judgment, all reasonable inferences drawn from the evidence must be viewed in the light most favorable to the parties opposing the motion." *Hanover Ins. Co. v. American Engineering Co.,* 33 F.3d 727, 730 (6th Cir.1994) (citing *Matsushita,* 475 U.S. at 586–88, 106 S.Ct. 1348). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id. See generally, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476–80 (6th Cir.1989).

## III.

The Equal Pay Act prohibits wage discrimination "between employees on the basis of sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). To establish a prima facie case of discrimination under the Equal Pay Act ("EPA"), a plaintiff must show that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974) (quoting 29 U.S.C. § 206(d)(1)).

For purposes of this motion Defendant does not dispute that Preston has established a *prima facie* case under the Act. However, not all differences in pay for

equal work constitute violations of the Act. Once the plaintiff establishes a prima facie case, the burden shifts to the employer to prove that the wage differential is justified under one of the four affirmative defenses set forth under § 206(d)(1) of the Equal Pay Act: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir.1998). The last of these defenses, which is at issue here, "does not include literally any other factor, but a factor that, at a minimum, was adopted for a legitimate business reason." *EEOC v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir.1988) (citing *Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1029–31 (6th Cir. 1983)). *See also Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1462 (7th Cir.1994) (factor need not be related to the requirements of a position, or business related, as long as it is bona fide and not applied discriminatorily).

■ "Because these nongender-based explanations for the wage differential are affirmative defenses, the defendant bears the burden of proof." *Buntin*, 134 F.3d at 799. Unlike the burden-shifting framework applicable to other discrimination claims, the plaintiff need not set forth evidence from which a jury could infer that the employer's proffered reason for the wage differential is pretextual. Rather, the employer must establish the defense so clearly that no reasonable juror could find to the contrary. *Id.* at 799 n. 6; *EEOC v. Romeo Cmty. Schs.*, 976 F.2d 985, 989 (6th Cir.1992). The burden of proving that a factor other than sex is the basis for a wage differential is a heavy one. *Timmer v. Michigan Dept. of Commerce*, 104 F.3d 833, 843 (6th Cir.1997). The employer must prove that "sex provides *no* part of

the basis for the wage differential." *Id.* at 844 (quoting *Brennan v. Owensboro–Daviess County Hosp.*, 523 F.2d 1013, 1031 (6th Cir.1975)).

Defendant Berendsen contends that the wage differential in this case was justified by the superior technical education and work experience on the part of the male FSRs. Defendant Berendsen has presented evidence that there is no standard starting salary for FSRs. Rather, in setting salaries, the local field sales manager considers a number of factors, including education, work experience, professional contacts, and salary demands. Nowak Decl. ¶ 5. Defendant has also presented evidence that FSRs are expected to find new opportunities to sell Berendsen's products and that it is an asset for FSRs to have an understanding of basic hydraulic engineering principles. Kapchinsky Decl. ¶ 3.

There is no dispute that the four male FSRs had more technical education and experience than Plaintiff. When Plaintiff began working at Berendsen she stated on her application that she had an associate's degree in business management and approximately nine years of work experience in sales.[1] She did not claim to have any training in fluid power or hydraulics.

In contrast to Plaintiff's lack of technical education and experience, Lovell had three years towards a bachelor's degree in Mechanical Design and Engineering, a variety of fluid power survey courses, sixteen years in sales in the fluid power industry, extensive contacts in the industry, and a prior salary of $50,000. McClure had no sales experience, but he had an associate's degree in business and engineering, twenty-nine years in mechanical and manufacturing engineering, seventeen of which were in outside sales of hydraulic products. Brooks had two years of community college, worked four years as a shop foreman in a hydraulic service center, and had ten

---

1. There is also evidence that in fact Plaintiff had no formal education beyond high school and she failed to disclose that some of time she said was involved in sales, she was actually involved in jobs that were clerical or administrative in nature.

years experience as a mechanic. Gillette had a bachelor's degree in business administration and was working on a masters degree in management. He had nineteen years experience in mechanical design in the manufacturing industry.

Defendant contends that because there is no question of fact that Plaintiff's technical education and experience was substantially inferior to that of her male counterparts, there is no question of fact that the differential in pay was attributable to that difference in technical expertise rather than gender.

The Court does not find the issue so easily resolved. While knowledge of hydraulics would undoubtedly be helpful to someone in the position of field sales representative for Berendsen, such technical knowledge was not one of the criteria listed on the three-page job responsibilities and qualifications document that was used at Berendsen when Plaintiff was hired as an FSR. Under the heading "Education or Formal Training," the document lists "[s]ome college education, technical or business, preferred," and "[c]ollege degree preferred." Under the heading "Experience," the documents lists "[s]elling experience preferred," and "[e]xtensive technical selling experience may be substituted for formal education." There was no requirement or even preference stated for technical education or experience in hydraulics. The employer's assertion now, after the fact, of a new criterion that was not in the list of job qualifications, creates an issue of fact as to whether technical education and experience were as significant a factor as Defendant now contends.

Furthermore, Plaintiff was hired by Mendricks and her salary was set by Mendricks. Plaintiff has presented evidence that Mendricks initially told her she could not have the FSR job because his customers would not accept a woman as a salesperson. She has also presented evidence from co-workers Gillette and Lovell that Mendricks did not favor women in industrial sales. Although Mendricks denies these allegations, it is not the Court's role to weigh the evidence or make credibility determinations regarding Mendricks' rationale for setting Plaintiff's salary as he did.

■ This case presents a close question. However, in light of the large pay differential, the fact that Defendant's asserted reason for that pay differential was not one listed in the job qualifications, and the evidence that Mendricks did not favor women in industrial sales, the Court concludes that Defendant has not conclusively established that the pay differential was based on factors other than Plaintiff's gender. There is sufficient evidence to create an issue of fact for trial as to whether Plaintiff was paid less than the four male FSRs at Berendsen's Grand Rapids office on the basis of her gender.

## IV.

Defendant has also moved for summary judgment on Plaintiff's gender discrimination claim under the Elliott–Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2101 *et seq.*; M.S.A. § 3.548(101) *et seq.*

■ To the extent Plaintiff's ELCRA claim is based on the pay differential, there is no significant difference between Plaintiff's federal Equal Pay Act claim and her state discrimination-in-pay claim. *Vandenhout v. Manchester Plastics, Inc.,* 538 F.Supp. 401, 402 (E.D.Mich.1982). The outcome on the federal Equal Pay Act claim governs the outcome on Plaintiff's state law wage discrimination claim as well. The basis for the pay differential is an issue of fact for trial. Accordingly, to the extent Plaintiff is alleging discrimination in pay under state law, Defendant's motion for summary judgment on Plaintiff's ELCRA claim must be denied.

## V.

It appears from Plaintiff's complaint that her allegations of gender discrimination under ELCRA go beyond the pay

differential. Plaintiff alleges she was treated differently than similarly situated males in several other respects, including being required to complete more paperwork, being provided inferior inside sales support, being required to do her own quoting, not being provided equivalent training and schooling, and not receiving favorable accounts. Disposition of these claims is not governed by the disposition of the wage claim, and must accordingly be addressed separately.

■ The Elliott–Larsen Civil Rights Act prohibits employers from discriminating against individuals on the basis of sex.[2] In evaluating discrimination claims under ELCRA, Michigan Courts generally follow federal law, including the burden shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *Lytle v. Malady (on rehearing)*, 458 Mich. 153, 173 n. 19, 579 N.W.2d 906 (1998).[3] The *McDonnell Douglas* burden shifting approach was tailored for cases involving circumstantial evidence. Discrimination claims may alternatively be established by direct evidence. *Harrison v. Olde Financial Corp.*, 225 Mich.App. 601, 606, 572 N.W.2d 679 (1997).

Defendant has shown that Plaintiff cannot establish a prima facie case of sex discrimination on the non-pay issues because she has not shown that the employer's actions about which she complains were "materially adverse." *See Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir.1996).

■ Plaintiff responds that the Court need not engage in the *McDonnell Douglas* burden shifting analysis because she is not relying on circumstantial evidence. She contends she has come forward with sufficient direct evidence of discrimination. In employment discrimination claims, "direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Laderach v. U–Haul*, 207 F.3d 825, 829 (6th Cir.2000). *See also Downey v. Charlevoix County Bd. of Rd. Comm'rs*, 227 Mich.App. 621, 633, 576 N.W.2d 712 (1998). Direct evidence proves the existence of a fact without any inferences or presumptions. *Laderach*, 207 F.3d at 829. To establish "direct evidence" of discrimination through a supervisor's comments made in the workplace, the remarks must be "clear, pertinent, and directly related to decision-making personnel or processes." *Dobbs–Weinstein v. Vanderbilt University*, 1 F.Supp.2d 783, 798 (M.D.Tenn.1998), *aff'd*, 185 F.3d 542 (6th Cir.1999) (quoting *Wilson v. Wells Aluminum Corp.*, No. 95–2003, 1997 WL 52921, *5 (6th Cir.Feb.7, 1997) (unpublished)). "Evidence of discriminatory motives must ... have some relationship with the employment decision

**2.** The Elliott–Larsen Civil Rights Act provides in pertinent part:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

M.C.L. § 37.2202(1)(a); M.S.A. § 3.548(202)(1)(a):

**3.** Under the *McDonnell Douglas* approach, to establish a prima facie case of discrimination, Plaintiff must show that she was a member of the protected class, that she suffered an adverse employment action, that she was quali-

fied for the position, and that she suffered the adverse employment action under circumstances that give rise to an inference of unlawful discrimination. *Lytle*, 458 Mich. at 172–73, 579 N.W.2d 906. If the plaintiff establishes a prima facie case of discrimination, a presumption of discrimination arises. The burden then shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the adverse action to overcome and dispose of the presumption. *Id.* at 173, 579 N.W.2d 906. If the defendant rebuts the presumption, the burden of proof shifts back to the plaintiff to show that the employer's proffered reasons were not true reasons, but merely a pretext for discrimination. *Id.* at 173–74, 579 N.W.2d 906.

in question; inappropriate but isolated comments that amount to no more than 'stray remarks' in the workplace will not do." *Venters v. City of Delphi,* 123 F.3d 956, 973 (7th Cir.1997) (citation omitted).

■ The "direct evidence" Plaintiff points to are comments Mendricks allegedly made to Plaintiff's co-workers to the effect that women did not belong in industrial sales. Mendricks' comments evidence discriminatory animus, but they are not direct evidence that any particular action he took was motivated by that animus. Plaintiff has come forward with no evidence linking these remarks to the particular actions she complains of: being required to do more paperwork, being required to do her own quotes, her lack of inside sales support, her receipt of less favorable accounts, or the training she received. *See Jacklyn v. Schering–Plough Healthcare Products,* 176 F.3d 921, 928 (6th Cir.1999).

■ Even if the Court were to find that a reasonable inference could be made establishing a nexus between the comments and Mendricks' actions, the Defendant has the opportunity to show that it would have taken the same actions without consideration of the protected characteristic. *Laderach,* 207 F.3d at 829. Defendant has come forward with nondiscriminatory explanations for why Plaintiff received the treatment she complains about.

As to several of Plaintiff's concerns, Defendant has shown that Plaintiff was not treated differently from similarly situated males. For example, Plaintiff's own report reveals that she was critical of the inside sales staff's failure to give support to any of the FSRs, male and female. With respect to quotes, Defendant has shown that the only individual who was not required to do his own quotes—Brooks— was not similarly situated because he lived out of state and had no access to the company computer. The male FSRs in Grand Rapids, like Plaintiff, were required to do their own quotes. Plaintiff has not rebutted this evidence.

Defendant has also produced unrebutted evidence that some of the perceived differences in treatment were motivated by considerations that had nothing to do with Plaintiff's gender. For example, Plaintiff's extra paperwork was triggered by her criticism of her supervisor. Defendant has produced evidence that accounts were divided between FSRs based upon client needs and the individual FSRs' strengths. Plaintiff has admitted that she has no factual basis for her belief that her receipt of less favorable accounts after McClure left was attributable to her gender. Plaintiff's own testimony also reveals that Defendant generally helped her obtain much of the training she needed. With respect to specific training programs, some she was unable to attend due to conflicts with her work schedule, and she was not signed up for the Sundstrand training because she did not have the requisite technical expertise.

There is simply no evidence of record to support Plaintiff's claim that the long list of perceived job inequities other than pay were attributable to gender discrimination. Defendant is accordingly entitled to summary judgment on Plaintiff's non-wage related gender discrimination claims.

For the reasons stated above, Defendant's motion for summary judgment will be granted in part and denied in part.

An order consistent with this opinion will be entered.

### *ORDER*

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Defendant Berendsen Fluid Power's motion for summary judgment (Docket # 29) is **GRANTED IN PART** and **DENIED IN PART.** To the extent Defendant seeks summary judgment on Plaintiff's wage discrimination claim under the Equal Pay Act and the Elliott–Larsen Civil Rights Act,

Defendant's motion is **DENIED.** To the extent Defendant seeks summary judgment on Plaintiff's state law sex discrimination claims other than unequal pay, Defendant's motion is **GRANTED.**