*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TERRY WOLFENBARGER and MARLA
WOLFENBARGER,

        Plaintiffs-Appellants,

v

FRANK WRIGHT, JR.,

        Defendant-Appellee,

and

STEVEN LEWIS,

        Defendant.

UNPUBLISHED
April 22, 2025
11:00 AM

No. 365232
Monroe Circuit Court
LC No. 2015-137561-NZ

Before: MALDONADO, P.J., and CAMERON and YOUNG, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's judgment of no cause of action entered after a jury trial. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual and early procedural background of this case is set forth in this Court's prior opinion, *Wolfenbarger v Wright*, 336 Mich App 1, 6-7; 969 NW2d 518 (2021):

> Plaintiffs, Terry and Marla Wolfenbarger, purchased the property located on Foster Lane in LaSalle Township in 1990. Over several years, plaintiffs planted 280 trees on their property. Defendant purchased nearby property in 1995. In approximately 2008, Steven Lewis purchased the lot west of and adjacent to plaintiffs. Because of the vastness of defendant's property interests, it appears he owned land to the west of Lewis, to the south of Lewis and plaintiffs, and to the east of plaintiffs.

-1-

According to plaintiffs, they had no issues with water on their property until after defendant constructed a new road or driveway on his property in March 2013. After that time, water started collecting in the southeast corner of their land, oversaturating and thus killing the trees that had been planted there. As of March 2015, 46 trees had died, and as of trial, 79 trees had died. Jeffrey Thierbach, an arborist, testified that all the trees on plaintiffs' land were affected in some manner. Plaintiffs also alleged that their basement started cracking after 2013. They attributed this damage to defendant's actions as well. In addition to constructing the driveway or roadway in early 2013, defendant also created a pond on his land in the latter half of 2013 that, according to plaintiffs' expert, acted to raise the level of the water table by six feet in the area. Plaintiffs alleged that this resulted in the water table now being several feet higher than the bottom of plaintiffs' basement, and another expert opined that the damage plaintiffs sustained in their basement was consistent with a high water table.

Plaintiffs filed a lawsuit against defendant, alleging claims of negligence, trespass, and nuisance. Plaintiffs' claims in the complaint were based on defendant's construction of a new road on his property and defendant's placement of a pile of dirt on his property. Plaintiffs alleged that these new features, in essence, prevented or dammed the water from leaving their property.

Defendant moved for partial summary disposition, arguing that the trespass and nuisance claims should be dismissed. Defendant maintained that although plaintiffs had listed three separate counts against defendant, the gravamen of plaintiffs' complaint was negligence. And because the claim sounded in negligence, defendant argued that plaintiffs were barred from seeking any noneconomic damages.

The trial court granted defendant's motion for partial summary disposition. *Id*. at 9. Plaintiffs sought leave to amend their complaint to plead facts in support of their nuisance and trespass claims, which the trial court denied. *Id*. at 9-10. The case proceeded to trial and the jury found in favor of plaintiffs on the remaining negligence claim. *Id*. at 10. "Although plaintiffs had requested a minimum of $429,850 to repair their basement and replace the trees, the jury awarded a total of $50,000 in damages." *Id*. at 10-11.

In plaintiffs' prior appeal, this Court held that, while the trial court correctly ruled that plaintiffs failed to adequately plead trespass and nuisance claims, it abused its discretion by not allowing plaintiffs to amend their complaint to add factual allegations in support of these claims. *Id*. at 14. On remand, the parties filed competing motions in limine regarding whether to admit the prior $50,000 jury verdict as evidence in the second jury trial, plaintiffs sought to adjourn the trial after one of their expert witnesses passed away, and plaintiffs also sought leave to file a second amended complaint. The trial court determined the prior verdict award was relevant and admissible. It denied plaintiff's motion to adjourn, but admitted the expert's prior deposition testimony to be provided to the jury despite plaintiffs' assertion that the deposition was insufficient. The trial court also denied leave to amend the complaint as untimely.

On the fourth day of the jury trial, plaintiffs' counsel and the trial court heard one of the jurors exclaim "Jesus!" after the trial court announced at the end of the day that the jury would need to return for another day. Plaintiff sought a mistrial, but the trial court did not believe the exclamation was an expression of bias toward either party. Before dismissing the jury for the day, the trial court also provided a cautionary instruction. Then, on the fifth day of trial, plaintiffs' counsel claims he heard the same juror repeatedly exclaim "Jesus" during plaintiff Terry Wolfenbarger's testimony as well as when plaintiffs' counsel "requested discussions on evidentiary issues[.]" Neither the trial court, the bailiff, nor defense counsel reported hearing these remarks. Plaintiffs again sought a mistrial. The trial court denied the request, opining that even if the juror did make the comments, it did not reflect her opinion toward "either a party, an attorney[,] or certainly not the case." The jury returned a verdict of no cause of action, and the trial court entered a judgment consistent with that verdict. Plaintiffs now appeal.

## II. PRIOR VERDICT

Plaintiffs first argue that the trial court erred by admitting the $50,000 prior verdict into evidence in the second trial. We disagree.

## A. STANDARDS OF REVIEW

We review a both trial court's decision on a motion in limine and its decision to admit evidence for an abuse of discretion. *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 63; 836 NW2d 898 (2013); *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 275; 730 NW2d 523 (2006). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Danhoff v Fahim*, 513 Mich 427, 442; 15 NW3d 262 (2024). "A trial court necessarily abuses its discretion when it makes an error of law." *Id*. (quotation marks and citation omitted). The proper interpretation of the Michigan Rules of Evidence is reviewed de novo. *Id*. at 441.

## B. ANALYSIS

Plaintiffs argue that the trial court erred by admitting the prior verdict award because it was irrelevant. In the alternative, they argue that even if the award was relevant, its prejudicial effect outweighed its probative value, rendering it inadmissible under MRE 403. Plaintiffs' arguments lack merit.

Under the Michigan Rules of Evidence, irrelevant evidence is inadmissible. MRE 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence[,]" and "the fact is of consequence in determining the action." MRE 401. The purpose of the second trial was to determine whether defendant was liable for nuisance or trespass such that plaintiffs could recover noneconomic damages.[1] "[T]ort damages generally

---

[1] The only claim adjudicated in the first trial was plaintiffs' negligence claim. *Wolfensbarger*, 336 Mich App at 10. Noneconomic damages are not available for negligence claims, meaning that,

include damages for all the legal and natural consequences of the injury (i.e., the damages that naturally flow from the injury,) which may include . . . pain and suffering and mental and emotional distress damages." *Hannay v Dep't of Transp*, 497 Mich 45, 65; 860 NW2d 67 (2014).

Plaintiffs wanted the trial court to inform the jury that they were awarded *something* in the first trial, thus demonstrating defendant was previously found to be liable. But plaintiffs did not want the jury to know the actual amount of the award. The trial court opined that, because noneconomic damages naturally flow from the underlying injury, the amount of actual property damage attributable to defendant was relevant. Specifically, it reasoned:

> Now, I will also note that I believe there is a common sense connection, as well as a legal connection between economic damages and noneconomic damages. The law clearly states that noneconomic damages, whether it be anxiety, mental anguish, all those factors that one can collect noneconomic damages for, the law says, naturally flow from the damage. So, that makes sense to this Court, and I think to a jury. If there was one tree that died with a $1000.00 worth of damages, I would think that noneconomic damage, typically, not in all cases, but typically would be less than if the jury found that 70 trees died and 280 were distressed, and economic damages were $50,000.00. So, I think that those naturally flow from that first award. And, again, in typical cases a jury hears both; both and make an award on economic and noneconomic damages at the same time.
>
> So, I think that the $50,000.00 award is relevant . . . .

The trial court's reasoning is well within the range of reasonable and principled outcomes. *Danhoff*, 513 Mich at 442. Generally, it is reasonable to expect that higher levels of economic damage would beget larger noneconomic damages. Relevant evidence is that which has "*any* tendency to make a fact more or less probable[.]" MRE 401 (emphasis added). It is within reason that the amount of economic damages plaintiffs received would have at least *some* tendency to make the value of noneconomic damages they sought more or less probable. *Id*. Thus, the verdict amount is relevant.

Under MRE 403, a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403 "does not prohibit prejudicial evidence; only evidence that is unfairly so. Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Waknin v Chamberlain*, 467 Mich 329, 334 n 3; 653 NW2d 176 (2002) (quotation marks and citation omitted).

Plaintiffs argue the verdict amount is unfairly prejudicial because there was a risk that the jury would use the verdict "as a limit, benchmark, or comparator figure[]" or "could have concluded that Plaintiffs were already compensated for their loss, and were overreaching in asking

---

after the dismissal of their trespass and nuisance claims, plaintiffs were only able to seek economic damages at the first trial. See *id*. at 17 n 2.

for more money." In support of these claims, plaintiffs cite *Blakely v Clarksville*, 244 F Appx 681 (CA 6, 2007), and *Hardrick v Auto Club Ins Ass'n*, unpublished per curiam opinion of the Court of Appeals, issued April 14, 2016 (Docket No. 326270). Not only are these cases not binding authority, see *Kern v Kern-Koskela*, 320 Mich App 212, 241; 905 NW2d 453 (2017) ("unpublished opinions are not binding precedent"); *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004) (lower federal court decisions are not binding on state courts), they are also each readily distinguishable.

*Blakely* concerned a prior verdict of a witness who testified about the verdict he received in his own lawsuit involving an identical claim against the same city, while *Hardrick* involved a prior verdict that was previously vacated as being unfair that was presented to a new jury asked to decide the exact same issue. *Blakely*, 244 F Appx at 683-684; *Hardrick*, unpub op at 2-3. By contrast, the prior, verdict in this case concerns the same underlying facts of the same complaining parties, and the second jury was tasked with determining a different category of damages than was decided by the first jury. Plaintiffs provide no binding authority in support of their argument, nor have they provided any evidence that the jury in this case unfairly relied upon the first verdict. *Waknin*, 467 Mich at 334 n 3. Therefore, we conclude that the trial court did not abuse its discretion by admitting the amount.

### III. MOTION TO ADJOURN AND DEPOSITION TESITMONY

Plaintiffs next argue the trial court erred by denying their motion to adjourn the trial after their expert witness died, and further erred by admitting the witness's deposition testimony to be heard by the jury. We disagree.

### A. STANDARD OF REVIEW

"A trial court's ruling on a motion to adjourn is reviewed for an abuse of discretion." *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 27; 930 NW2d 393 (2018). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Danhoff*, 513 Mich at 442. "A trial court necessarily abuses its discretion when it makes an error of law." *Id*.

### B. ANALYSIS

A trial court has discretion to adjourn a proceeding if a witness is unavailable. MCR 2.503(D)(1). The trial court declined to adjourn the jury trial in this case, finding that the expert's prior deposition testimony was admissible under former MRE 804(b)(5), as amended by 464 Mich clxxviii. Under this rule, "[t]estimony given as a witness in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination[]" is admissible if the declarant is unavailable. *Id*.

Plaintiffs opposed using the deposition testimony as evidence, arguing it was designed for discovery, and was thus not comprehensive. The trial court disagreed, reasoning that the expert's testimony offered "an extensive opinion as to a standard of care . . . and intent," which it opined was plaintiffs' purpose for calling him as a witness. Plaintiffs' counsel agreed, but contended that

reading a transcript was "a poor substitute for a live expert." The trial court nonetheless ruled that the deposition testimony could be admitted into evidence, and, thus, adjournment was unnecessary. The trial court's reasoning was not an abuse of discretion. The expert testified at length about his opinions on defendant's intent, and plaintiffs' contention that the deposition was a "poor substitute" does not render the trial court's decision an abuse of discretion. On appeal, plaintiffs claim the trial court abused its discretion because plaintiffs diligently sought an adjournment after learning of the expert's passing. This may be true, but it does not negate the trial court's reasonable conclusion that the expert's deposition testimony was sufficient to serve the purpose for which plaintiffs sought to use him as an expert at trial.[2]

## IV. MOTION FOR LEAVE TO AMEND

Plaintiffs next argue the trial court erred by denying their motion to amend their complaint to include additional factual allegations in support of their negligent nuisance and statutory trespass claims. We disagree.

## A. STANDARD OF REVIEW

"We review a trial court's decision regarding a plaintiff's motion to amend the pleadings for an abuse of discretion." *Sanders v Perfecting Church*, 303 Mich App 1, 8-9; 840 NW2d 401 (2013). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Danhoff*, 513 Mich at 442. "A trial court necessarily abuses its discretion when it makes an error of law." *Id*.

## B. ANALYSIS

The relevant motion for leave to amend at issue in this appeal came about after the parties filed competing motions for summary disposition. Defendant moved under MCR 2.116(C)(7), arguing that plaintiffs' claims were barred because they had already recovered an award in a legal-malpractice case. Plaintiffs moved under MCR 2.116(C)(10), arguing that there was no question of fact that defendant intended to divert water onto plaintiffs' property. The trial court denied the motions. Plaintiffs then moved for leave to file a second amended complaint under MCR 2.116(I)(5) and MCR 2.118(A), seeking to: (1) bifurcate the existing nuisance claim into separate claims of intentional and negligent nuisance; (2) bifurcate the existing trespass claim into separate

---

[2] Plaintiffs also raise two new arguments on appeal which were not presented to the trial court. First, they argue that they did not have the opportunity to "fully develop" the expert's testimony in the deposition. Second, they seemingly argue that the trial court erred in admitting the testimony by calling into question whether their expert could have satisfied the requirements for an expert witness under MCL 600.2955 or MRE 703. "In civil cases, Michigan follows the raise or waive rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) (quotation marks and citation omitted). "If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue." *Id*. We decline to consider these unpreserved issues.

common-law and statutory-trespass claims; and (3) add factual allegations pertaining to defendant's purported use of toxic fill, which would support all of plaintiffs' claims.

The trial court denied leave to amend under either subrule. Under MCR 2.116(I)(5), for motions for summary disposition under MCR 2.116(C)(8), (9), or (10), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." In rejecting plaintiffs' reliance on this subrule, the trial court noted that plaintiffs' proposed amendment had no connection with its motion for summary disposition under MCR 2.116(C)(10), rendering MCR 2.116(I)(5) inapplicable. MCR 2.118(A)(2) provides that, when leave to amend is sought, it "shall be freely given when justice so requires." The trial court denied the motion on the basis of this rule because of undue delay.

Here, plaintiffs provide no substantive argument in support of their claims of error as to the first two goals of their second amended complaint. Plaintiffs' argument section regarding the negligent-nuisance claim simply restates some of this Court's earlier opinion and provides some caselaw as to the elements of negligent and intentional nuisance. It then asserts that the trial court, sua sponte, found bifurcation was necessary because plaintiffs did not state a cause of action for negligent nuisance, and yet, when plaintiffs sought to amend to cure the deficiency, the trial court denied their motion. Plaintiffs do not explain how the trial court's denial of leave to amend was erroneous.[3] As for the statutory-trespass claim, plaintiffs claim that the trial court erred by finding they had not pleaded a cause of action because it failed to look to the gravamen of the complaint, which referenced treble damages under the relevant statute in its prayer for relief, and yet, again, when plaintiffs sought to amend to cure the alleged deficiency, the trial court denied their motion.

---

[3] Along the same vein, one of plaintiffs' stated questions on appeal is that the trial court erred by "sua sponte ruling that Plaintiffs had not stated a claim for negligent nuisance in their complaint, despite a contrary holding from the Court of Appeals in this Action[.]" Because plaintiffs provide no argument to support their contention that they had adequately pleaded negligent nuisance in the first amended complaint, this issue is likewise abandoned. *Froling v Carpenter*, 203 Mich App 368, 373; 512 NW2d 6 (1993). Regardless, plaintiffs' interpretation of this Court's holding is incorrect. In holding that plaintiffs' proposed first amended complaint properly pleaded the elements of nuisance, we noted:

> First, plaintiffs alleged that they had property rights and privileges in the private use and enjoyment of their property. Second, they alleged that the invasion of their interest caused significant harm. Third, plaintiffs alleged that defendant's conduct was the legal cause of the invasion of their interest in the enjoyment of their land. And finally, *plaintiffs alleged that defendant intended the invasion of their interest in the private use and enjoyment of their land*. [*Wolfenbarger*, 336 Mich App at 23 (emphasis added).]

This Court's prior holding thus only supports the fact that plaintiffs successfully pleaded *intentional* nuisance in their first amended complaint. Nothing in our holding suggests we made any such findings as to a claim of negligent nuisance.

-7-

Similar to their negligent-nuisance argument, while plaintiffs assert that the trial court erroneously concluded they had not adequately pleaded the statutory-trespass claim in the first instance, they do not explain how the trial court's actual denial of their motion for leave to amend was erroneous.[4]

> It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. [*ER Drugs v Dep't of Health and Human Servs*, 341 Mich App 133, 146-147; 988 NW2d 826 (2022) (quotation marks and citation omitted).]

Plaintiffs did not sufficiently brief the merits of their arguments as to the negligent-nuisance and statutory-trespass claims. As such, "plaintiffs abandoned [these] issue[s] by failing to argue in their appellate brief the merits of their allegation[s] of error[.]" *Froling v Carpenter*, 203 Mich App 368, 373; 512 NW2d 6 (1993).

As for the third aspect of plaintiffs' motion for leave to amend, the trial court denied leave on the basis of undue delay. Specifically, the trial court reasoned that the case had been pending for nine years, and yet, in all that time, plaintiffs never pleaded that toxic fill was related to any of their claims. While plaintiffs alleged the issue was "litigated" in the first trial, they provide no support for this position from the record. Indeed, the alleged toxicity of this fill was only briefly addressed in the first trial. We thus agree with the trial court's determination that plaintiffs were essentially seeking to add new claims on the basis of alleged toxic materials three weeks before trial despite the fact that the case had been pending for nine years. While "delay, alone, does not warrant denial of a motion to amend[,]" a delay that was in bad faith or that prejudices the opposing party can. *Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998). " 'Prejudice' in this context does not mean that the allowance of the proffered amendment may cause the opposing party to ultimately lose on the merits." *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997). "Rather, 'prejudice' exists if the amendment would prevent the opposing party from receiving a fair trial[.]" *Id*.

Defendant would be hampered by trying to investigate and gather evidence related to these new claims with trial only three weeks away. Furthermore, as the trial court noted, plaintiffs knew at the time the road was constructed in 2013 that materials from the armory were used. Plaintiffs failed to provide any justification as to why they waited so long to seek amendment on this basis. As such, the trial court did not abuse its discretion by denying plaintiffs' request as to this aspect of the complaint.[5]

---

[4] To the extent plaintiffs argue that the trial court erred by finding they failed to plead statutory-trespass in their first amended complaint, this issue is not contained in the statement of questions presented, and is therefore abandoned. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008).

[5] Because the trial court properly denied plaintiffs' motion to amend to include allegations related to the alleged toxic fill, we need not address plaintiffs' argument on appeal that the trial court erred

## V. MOTION FOR MISTRIAL

Lastly, plaintiffs argue the trial court erred by denying their motion for a mistrial on the basis of juror misconduct. We disagree.

## A. STANDARD OF REVIEW

"Whether to grant or deny a mistrial is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion resulting in a miscarriage of justice." *In re Estate of Flury*, 249 Mich App 222, 228; 641 NW2d 863 (2002) (quotation marks and citation omitted). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Danhoff*, 513 Mich at 442.

## B. ANALYSIS

"A mistrial should be granted only when the error prejudices one of the parties to the extent that the fundamental goals of accuracy and fairness are threatened." *Flury*, 249 Mich App at 229. Plaintiffs contend the juror's multiple exclamations of "Jesus!" when plaintiffs' counsel was speaking or when Terry was testifying "demonstrated clear bias and misconduct[,]" and summarily asserts that "[t]here is no doubt that juror misconduct and bias had a palpable effect on the outcome of this case[,]" in that "[t]he juror's expressions of bias against the Plaintiffs likely had an infections [sic] effect on the rest of the jurors."

Plaintiffs offer no evidence in support of their contention that the juror's exclamations reflected a bias toward plaintiffs, nor have they provided any evidence to support their conclusory allegation that this alleged bias contaminated the other jurors. Moreover, none of the purported remarks are reflected in the transcripts, and, thus, the record does not support plaintiffs' claims. Plaintiffs are essentially asking this Court to infer the meaning of these unsubstantiated exclamations. We decline to do so.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Thomas C. Cameron
/s/ Adrienne N. Young

---

in precluding admission of any evidence related to the use of the fill. With fill-related allegations not being a subject for trial, it naturally follows that any evidence related to it would be irrelevant and therefore inadmissible under MRE 402.